**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TRAVIS L. ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 C 03546 |
| | ) | |
| SHUTTERFLY LIFETOUCH LLC, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In December 2024, *pro se* Plaintiff Travis Allison ("Allison") ordered his son's school pictures from Defendant Shutterfly/LifeTouch, LLC ("Shutterfly"), the firm that provides photography service at his son's school. Unfortunately, the photos he received were damaged, replacement copies were delivered to the wrong address, and a third mailing never arrived at all. One would expect these circumstances would support a claim, if any, for breach of an express or implied contract. Plaintiff Allison sees things differently, and has filed a federal lawsuit asserting a myriad of claims against Shutterfly. Shutterfly moves to dismiss all of the claims except the one for breach of contract. For the reasons set forth below, the motion [40] is granted. Apart from his contractual allegations, Allison has not alleged any plausible claim that he has standing to pursue. Because diversity is the only basis for jurisdiction over that claim, and it does not appear that $75,000 is at stake, the court directs Plaintiff to show cause why this complaint should not be dismissed for lack of subject matter jurisdiction.[1]

---

[1]    The parties are diverse in citizenship: Allison is a citizen of Illinois, and Defendant Shutterfly Lifetouch, LLC ("Shutterfly") is a limited liability company, whose sole member ultimately traces back to a Delaware corporation, which is headquartered in California. (*Id.* ¶¶ 5–6; Def.'s Corp. Disclosure Statement [22] (describing Shutterfly Lifetouch, LLC's sole member as another LLC, whose sole member is another LLC, and so on)); *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020) (to determine the citizenship of a member that "is itself a partnership or limited liability company, [] the identity of each member of each of these entities must be traced until we reach a corporation or natural person"). As explained below, however, it is not clear that $75,000 is at stake for the only claim that survives this ruling.

## BACKGROUND

I.     **Factual Background**

The following facts are alleged in the Amended Complaint [15], which the court accepts as true at this stage. *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 926 (7th Cir. 2025).

On December 9, 2024, Plaintiff Allison purchased a premium package of his son's school portraits from Shutterfly for $71.87. (Am. Compl. [15] ¶ 12.) Allison does not attach any written purchase agreement with Shutterfly, but Shutterfly has attached the terms of service—to which Allison was required to agree in order to purchase the photos—to its motion to dismiss.[2] Allison does not dispute that he agreed to the terms of service, but instead argues that its enforceability against him is a factual question that is inappropriate at this stage. The terms of service provide:

> TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, ***NEITHER WE NOR ANY OF OUR DIRECTORS, OFFICERS, SHAREHOLDERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES, OR AFFILIATES (THE "SHUTTERFLY PARTIES") SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS, PROFITS, USE OR DATA), WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE AND STRICT LIABILITY) OR ANY OTHER LEGAL THEORY,*** EVEN IF THE SHUTTERFLY PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, ARISING OUT OF OR RELATING IN ANY WAY TO OUR PROVISION OF (OR FAILURE TO PROVIDE) PRODUCTS OR SERVICES, OR FROM UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR SUBMISSIONS OR DATA, EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED ITS ESSENTIAL PURPOSE. . . . ***YOUR SOLE AND EXCLUSIVE REMEDY FOR DISSATISFACTION WITH PRODUCTS IS TO OBTAIN A REFUND***, AND YOUR SOLE AND EXCLUSIVE REMEDY FOR DISSATISFACTION WITH SERVICES IS TO STOP USING THE SERVICES. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, ***THE MAXIMUM LIABILITY OF THE SHUTTERFLY PARTIES ARISING OUT OF OR RELATING IN ANY WAY TO OUR PROVISION OF (OR FAILURE TO PROVIDE) PRODUCTS OR SERVICES SHALL BE THE ACTUAL PRICE PAID THEREFORE BY YOU.***

(Ex. A to Kerber Decl. [40-1] at 11 (emphasis added).)

---

[2]     When a contract is referred to in the complaint and central to the claim, the court can consider it under the incorporation by reference doctrine. *In re Harley-Davidson*, 151 F.4th at 926.

When Allison received his order, he discovered that his son's face was distorted in the photo. (Am. Compl. [15] ¶ 13.) Shutterfly reprinted and mailed the photographs, but according to Allison's tracking information, the package was delivered to an address in Philadelphia, rather than to Allison's address in Illinois, so he did not receive it. (*Id.* ¶ 14.) Allison alleges that Shutterfly promised to print the order a third time, but that order too never arrived, despite his correspondence about the issue in January 2025 with a supervisor at Shutterfly identified as "Lisa W." (*Id.* ¶¶ 16–17.) The complaint includes no further details about these conversations, but Allison alleges that Shutterfly "fabricated screenshots" when he confronted them, and that Shutterfly denied any error. (*Id.* ¶ 38.)

Allison asserts that he is a public figure who holds trademarks and copyrights under the name "Travo," the name he uses to identify his work as a "recording artist" and "entrepreneur." (*Id.* ¶¶ 19, 46.) His brand includes his name, logo, image, and associated works. (*Id.* ¶ 47.) He alleges that he planned to use his son's school portrait as part of his "brand engagement strategy during the 2024 holiday season," and that it was to be "shared with community members, fans, and family." (*Id.* ¶ 49.) The misdelivery of the portrait "interfered with Plaintiff's ability to commercially represent and distribute the images." (*Id.* ¶ 48.) Plaintiff also alleges that Defendant's conduct "created a false association between Plaintiff and Defendant's inadequate services" (he does not say how), thus harming his "professional reputation and community trust." (*Id.* ¶¶ 51, 54.) He has alleged no other details concerning his brand or engagement strategy, or how a school portrait of his minor son was an expected part of that strategy.

As a result of these events, Allison claims to have suffered financial loss, reputational harm, and emotional distress. (*Id.* ¶ 25.) The contract claim is straightforward: Allison contends that Shutterfly breached his purchase agreement by delivering the first order in defective condition, misdelivering the second order, and failing to fulfill his third order. (*Id.* ¶¶ 20–25.) He also alleges that the misdelivery of the portrait constitutes gross negligence in that Shutterfly

3

failed to follow industry standards by printing and shipping portraits "without quality control," "failing to secure or track packages," and delivering portraits to the wrong address. (*Id.* ¶¶ 26–30.) The delivery of his son's "private photographic images" to another address, he alleges, also constitutes invasion of privacy and violations of both the Illinois Biometric Information Privacy Act and the California Customer Records Act. (*Id.* ¶¶ 31–36.) Further, Allison alleges that Shutterfly "knowingly made false statements" by misrepresenting the status and location of his order through "fabricated screenshots" and denying the error. (*Id.* ¶¶ 37–41.) Shutterfly's alleged failure to deliver the portrait and false statements about the delivery, according to Allison, also constitute unfair and deceptive trade practices under the Federal Trade Commission Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. (*Id.* ¶¶ 42–45.)

Allison also brings various claims under the Lanham Act relating to his Travo trademark: trademark infringement, false endorsement or association, unfair competition, and "trademark dilution by tarnishment." (*Id.* ¶¶ 46–61.) He adds a state law claim of negligent infliction of emotional distress, allegedly arising from anxiety about his child's privacy, the inability to share the photos with family, and his brand's reputational harm. (*Id.* ¶¶ 62–66.) He requests "compensatory damages in excess of $75,000," punitive damages, and statutory damages, as well as injunctive relief that includes delivery of the photos, confirmation of the destruction of misdelivered copies, improved security measures for future customers, and attorney's fees and costs. (*Id.* at 9.)

## DISCUSSION

### I. Legal Standard

Shutterfly argues that, apart from the contract claim, Plaintiff Allison's claims must all be dismissed for lack of jurisdiction (FED. R. CIV. P. 12(b)(1)) or for failure to state a claim (FED. R. CIV. P. 12(b)(6)). The standards that govern such a motion are familiar. A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction, that is, "the power of a federal court to act." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000). If a federal

4

court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). As the plaintiff, Allison bears the burden of demonstrating jurisdiction. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

Similarly, a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II.    Analysis

The court first turns to Shutterfly's standing challenge, because this argument implicates federal jurisdiction. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed." (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999))). "To sue in federal court, a plaintiff must plausibly allege (and later prove) that he has suffered an injury in fact that is concrete and particularized, actual or imminent, and traceable to the defendant's conduct." *Dinerstein v. Google, LLC*, 73 F.4th 502, 508 (7th Cir. 2023). It is undisputed that Plaintiff sufficiently pleaded standing for his breach of contract claim; he alleges he paid Shutterfly $71.87 for a portrait he never received. But Shutterfly argues that the injuries that Allison alleges arise from his non-contract claims are too speculative and implausible to meet the standing requirement.

For each of these non-contract claims, Allison alleges some combination of the following injuries: (1) emotional distress arising from his child's portrait being delivered to another address

5

and not having the photo for the holidays, and (2) reputational and financial damage arising from infringement of his trademark. He argues, without any supporting legal authority or analysis, that his "injuries are not hypothetical; they are supported by specific factual allegations regarding Defendant's failure to deliver contracted services, unauthorized use and potential dissemination of Plaintiff's child's image, and the resulting psychological and reputational impact on Plaintiff and his family." (Pl.'s Opp'n [42] ¶ 15.)[3] The court disagrees. Allison's references to psychological and reputational harm "lack plausibility, concreteness, or imminence . . . ." *Dinerstein*, 73 F.4th at 508, 514 (affirming dismissal of privacy claims, holding plaintiff lacked standing where he only pleaded hypotheticals "unsupported by any concrete details"). Allegations as speculative as these are insufficient to establish standing. For example, in *Clapper v. Amnesty Int'l USA*, the Supreme Court reversed a determination that the plaintiffs, who were attorneys and various labor, legal, and media organizations, had standing to challenge 50 U.S.C. § 1881a, a law allowing surveillance of foreign individuals located abroad. 568 U.S. 398 (2013). Because of their jobs, plaintiffs often communicated with individuals abroad who they assumed would be the subject of government surveillance. But because plaintiffs' risk of being surveilled themselves was hypothetical, too attenuated, and not traceable to the law at issue, as plaintiffs only *suspected* their communications were intercepted, the Supreme Court held that "respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410.

---

[3] Defendant is correct that a complete failure to engage in legal analysis can serve as a waiver, *see Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019) (plaintiff's failure to cite any legal case, analyze the defendants' cited cases, or discuss the elements of any claims "clearly results in waiver"). The court granted Allison leave to file a sur-reply in opposition to the motion to dismiss [62], however, and he did cite a handful of cases in that sur-reply [65], discussed in the text. The court notes that Allison's brief in opposition [42] to Defendant's motion is also stylized as a "sur-reply"; the court understands that this document is intended to be his brief in opposition, and cites it as such. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807 (7th Cir. 2017) ("A trial court is obligated to liberally construe a *pro se* plaintiff's pleadings.").

In his complaint, Allison alleges that he suffered emotional distress because Shutterfly's conduct caused him "embarrassment" and "anxiety" as the "father of a child whose images were improperly disseminated," and that it led to the "loss of priceless family keepsakes," a "violation of his minor child's privacy," and the "inability to fulfill community and family expectations tied to his personal and professional image." (Am. Compl. [15] ¶¶ 64–65.) All of these harms are said to arise from the alleged wrongful shipment of his child's school portrait to an unknown address in Philadelphia.

The alleged delivery of a child's school portrait to the wrong address, however distressing Allison claims it was, is not a cognizable privacy injury on its own. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–342 (2016), *as revised* (May 24, 2016). It is worth noting here that Allison is alleging a violation of his minor *son's* privacy. But Allison does not bring this suit on behalf of his son, neither as "next friend" nor as a guardian. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020) (summarizing the "[w]ell-established exceptions [that] allow a plaintiff to bring a claim on behalf of another," including minors). Further, Allison does not allege that the photo was actually received by anyone, viewed by anyone, publicized at all, or somehow placed Allison himself in any false light. Indeed, the only allegations relating to actual dissemination of the photos are Allison's own thwarted plans to publish his son's photos to promote Allison's Travo brand. For this same reason, Allison also fails to state a claim under Rule 12(b)(6) for any of the four types of invasions of privacy. *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 184, 660 N.E.2d 180, 182 (1st Dist. 1995) (the four types being: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) a public disclosure of private facts; and (4) publicity which reasonably places another in a false light before the public."). Misdelivery of photos perhaps created a risk of disclosure, but Allison has not alleged that any disclosure in fact occurred or that he was harmed by it.

The Illinois Biometric Privacy Act allegations also fail. A claim under that statute requires an allegation that Defendant used a biometric identifier or information, but the Act expressly excludes photographs from this definition.[4] 740 ILCS 14/10 ("'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include . . . photographs . . . ."). Allison does not allege that Shutterfly scanned his son's image for facial geometry or otherwise unlawfully collected biometric information to identify his son from the photo. Consequently, he has not alleged a violation of the Act, much less a violation that harmed him.

Allison's Lanham Act allegations fare no better. As the court understands those allegations, Allison contends that he suffered reputational damage and financial loss because he was unable to carry out his plan to use his son's portrait in connection with promoting his brand. He offers no information about how he planned to use the portrait, nor has he explained how the failure to receive his son's portrait damaged Allison's own reputation. More importantly, he does not allege how Shutterfly's conduct implicated his trademark in any way. There is no allegation that Shutterfly used the Travo trademark, or that Shutterfly tried to use Allison's son's image to promote Shutterfly products, let alone to associate Shutterfly products with the Travo brand.[5] Not only does the complaint fail to state a claim for trademark infringement or false association (both of which require the *use* of a trademark), it also does not explain how any injury to his reputation or brand is traceable to Shutterfly's conduct. *See* 15 U.S.C. §1125(a)(1) ("Any person who . . . uses in commerce"); 15 U.S.C. § 1125(c)(1) ("another person who . . . commences use of a

---

[4] Likewise, the California Customer Records Act depends on the use of personal information. CAL. CIV. CODE §§ 1798.80–84; *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 593 (N.D. Ill. 2022) ("The CCRA 'regulates businesses with regard to treatment and notification procedures relating to their customers' personal information.'" (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1142 (N.D. Cal. 2018)). But Allison's allegations do not implicate his personal information or data.

[5] Plaintiff also argues that he has stated a claim under the Illinois Right of Publicity Act. (Pl.'s Opp'n [42] ¶ 38.) The complaint makes no mention of this statute.

mark"); 15 U.S.C. § 1114(1)(a)–(b) ("Any person who shall . . . use . . . or [] reproduce, counterfeit, copy, or colorably imitate a registered mark").

The allegation that Allison lost "priceless family keepsakes" is simply implausible. What was lost is a school photo of a child—not a portrait that had been in the family for years and was irreplaceable. Allison has allegedly never seen the final version of the portrait and could not know that it was a keepsake. And while he claims the photo is a priceless treasure, he also alleges it can be replaced. (*See* Am. Compl. [15] at 9 (requesting "[r]edelivery of Plaintiff's undelivered photos").) Under Illinois law, "emotional distress damages are only cognizable 'where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 645 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017) (citing *Doe v. Northwestern Univ.*, 289 Ill. App. 3d 39, 45, 224 Ill. Dec. 584, 589, 682 N.E.2d 145, 150 (1st Dist. 1997)) (finding that there were no factual allegations that suggest defendants' failure to disclose the existence of an umbrella policy, resulting in prolonged settlement negotiations, caused unendurable distress). No allegations here would allow the court to infer that any conduct on Shutterfly's part caused emotional distress that rises to this level. And Allison's failure to allege any physical injury dooms his negligent infliction of emotional distress claim. *Barnes v. Anyanwu*, 391 F. App'x 549, 552 (7th Cir. 2010) (per curiam) (negligent infliction of emotional distress requires plaintiff to "suffer some contemporaneous physical contact that caused the emotional distress," or be a bystander suffering "emotional distress and a physical injury or illness from the emotional distress").

In sum, Allison's allegations that he suffered emotional, reputational, and financial damage apart from what he paid for the portrait are speculative, conclusory, and insufficient to plead standing.[6] Cases he cites can be distinguished on these grounds. In *Lewert v. P.F. Chang's*

---

[6] Allison's request for improved security measures for future Shutterfly customers does not change things. He has no standing to sue on behalf of future customers of Shutterfly, both for the reasons stated and because a plaintiff ordinarily "must allege their *own* injuries to establish standing" absent an exception allowing them to bring a lawsuit on behalf of others, which

*China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016), the Seventh Circuit reversed dismissal of data breach claim on standing grounds, but in that case, the plaintiffs had identified concrete and particularized harm: they had spent time and money disputing fraudulent charges and monitoring their credit scores.[7]

To the extent that Allison alleges that the $71.87 he is out-of-pocket for the undelivered portrait is related to his claims of unfair and deceptive business practices, gross negligence, or fraudulent misrepresentation, these tort claims must be dismissed for additional reasons. First, as Shutterfly points out, Illinois law applies the economic loss rule (sometimes referred to as the *Moorman* doctrine), which bars tort recovery for purely economic harms arising from a contractual relationship, including for the sale of goods. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 813 (7th Cir. 2018) (affirming dismissal of tort claims where plaintiff alleged only economic loss arising from contract; "Illinois applies *Moorman* to services as well as the sale of goods because both business contexts provide 'the ability to comprehensively define a relationship' by contract." (citing *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 166, 679 N.E.2d 1197, 1200 (1997))).

While there are a few exceptions to this rule, the only one that could possibly apply here would implicate Allison's fraud claims: fraudulent misrepresentation and the Illinois Consumer Fraud and Deceptive Business Practices Act.[8]  *See id.* at 813 (outlining exceptions "for personal

---

Allison also does not allege. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020) (emphasis added).

[7]     Allison also cites *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) for the proposition that whether his assent to the terms of service was valid is a question of fact that should not be resolved at this stage. The validity of Allison's acceptance of the terms might be relevant if the court were dismissing his non-contract claims on the basis of the agreement. The terms of service might well constitute an independent, substantive basis for dismissal of these claims, but for now the court concludes Allison lacks standing to pursue them.

[8]     The FTC Act provides no private right of action, so Allison is limited to his state law claim. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (Some state statutes "broadly prohibit unfair business practices, including deceptive advertising. Unlike the

injuries or property damage resulting from sudden or dangerous occurrences, for fraud, and for negligent misrepresentations by professional business advisors"). But Allison fails to plead his fraud claims with the particularity required by Rule 9(b). FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("Claims for violation of the [Illinois Consumer Fraud and Deceptive Business Practices Act] are subject to the same heightened pleading standards as other fraud claims[.]") He does not allege what acts he took in reliance on the misrepresentation, and he does not allege the time or place of any misrepresentation. The fraud claims appear to be little more than repackaged breach of contract claims (*i.e.* Shutterfly promised to deliver the photo, and it did not), which is insufficient. *Id.* at 399 ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005))).

The fraud claims are dismissed.

## CONCLUSION

For the reasons stated, Shutterfly's motion to dismiss [40] is granted. All that remains is a state law claim for breach of contract. Based on the allegations in the complaint, complete diversity exists between the parties, as required by 28 U.S.C. § 1332. But there is no obvious basis for any claim of damages in excess of $75,000. Ordinarily, the amount in controversy for diversity jurisdiction is assessed at the time the case was filed. If, however, "on the date the case began, it was legally impossible for" the plaintiff to have met the amount in controversy, dismissal may be appropriate. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). "A demand is legally impossible for jurisdictional purposes when it runs up against a statutory or contractual cap

---

federal act, however, these state statutes provide private rights of action to complement enforcement by the government."). Consequently, any claim under the FTC Act is dismissed.

on damages." *Id.* at 994. Shutterfly argues in its motion to dismiss that under the contract, Plaintiff's sole remedy is a refund. Indeed, the terms of service provide that the maximum liability "arising out of or relating in any way to our provision of (or failure to provide) products or services shall be the actual price paid." (Def. Br. [41] at 11.) Consequently, it appears Allison's contract damages are capped at $71.87.

Plaintiff is directed to show cause within 14 days why this case should not be dismissed without prejudice for lack of subject matter jurisdiction. Defendant has leave to file a response seven days thereafter.

ENTER:

Dated: December 31, 2025

_____
REBECCA R. PALLMEYER
United States District Judge