**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRAVIS L. ALLISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 25 C 03546** |
| | ) | |
| **SHUTTERFLY LIFETOUCH, LLC,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

In December 2024, *pro se* Plaintiff Travis Allison ordered photos of his son from Defendant Shutterfly/LifeTouch, LLC. The photos he received were damaged, replacement copies were sent to the wrong address, and a third mailing never arrived at all. In response, Mr. Allison filed a sprawling lawsuit in federal court, asserting numerous violations of federal law, Illinois law, and California law. In a prior order, the court dismissed all of these claims except for breach of contract, and ordered him to show cause why the case should not be dismissed for lack of federal jurisdiction. Allison filed a response as well as a motion for reconsideration. As explained below, the motion for reconsideration is denied, and the remaining claim is dismissed.

### BACKGROUND

The court assumes the parties' familiarity with the factual and procedural background of this case, which was explained in some depth in the court's prior ruling. *See Allison v. Shutterfly LifeTouch LLC* ("*Allison I*"), No. 25 C 03546, 2025 WL 3771383 (N.D. Ill. Dec. 31, 2025). To briefly summarize: In 2024, Allison purchased his son's school photos from Defendant for $71.87. In making this purchase, Allison agreed to Shutterfly's terms of service, which instruct that "your sole and exclusive remedy for dissatisfaction with products is to obtain a refund . . . the maximum liability of the Shutterfly parties arising out of . . . [Shutterfly's] products or services shall be the actual price paid therefore by you." *Id.* at *1 (typeface modified). Allison received his order, but claims his son's face was distorted. Allison reached out to Shutterfly for reprints, but they were

mailed to the wrong location. Allison contacted Shutterfly a third time, but despite the representations of a customer service agent, the third order never arrived. *Id.* at *2.

Allison, a recording artist who performs under the stage name "Travo," claims Shutterfly's failure to deliver the photos had broad ramifications on his career. *Id.* Allison asserts that he planned to use his son's photos in marketing materials to promote his brand, and that Shutterfly's failure to deliver the promised photos "interfered with [his] ability to commercially represent and distribute the images." *Id.* He does not explain how his son's school photos played a role in this marketing campaign, nor why he is unable to obtain usable photographs of his son from some other source. He contends, instead, that Shutterfly's failure to deliver these school photographs of his son infringed and diluted his "Travo" trademark. *Id.* at *3.

Seeking relief for this alleged wrong, Mr. Allison—a serial filer of lawsuits in this District[1]— filed this lawsuit. He asserted numerous state and federal law claims, including contract claims, tort claims, federal copyright claims under the Lanham Act, as well as statutory claims under the Federal Trade Commission Act, the Illinois Consumer Fraud and Deceptive Practices Act, the Illinois Biometric Privacy Act, and the California Customer Records Act. As noted, the only one of these claims that survived Defendant's motion to dismiss was a state law claim for breach of contract. *Id.* at *3–6. Because damages related to that claim appear to be approximately $71.87—far below the federal amount in controversy threshold—the court ordered him to show cause why the remaining count should not be dismissed without prejudice for lack of subject matter jurisdiction.

In response, Allison filed a consolidated motion for reconsideration and to show cause [78]. Defendant responded [81], and Allison replied [84]. The motion is now fully briefed.

---

[1] Mr. Allison appears to have filed ten other *pro se* lawsuits in the Northern District in 2025 alone. *See Allison v. Nike, Inc.*, 25 C 14510; *Allison v. Public Storage,* 25 C 12942; *Allison v. City of Park Ridge*, 25 C 12866; *Allison v. City of Chicago*, 25 C 10793; *Allison v. Greystar Real Estate Partners*, 25 C 10795; *Allison v. Illinois State Police*, 25 C 09285; *Allison v. Mike Anderson Chevrolet of Chicago*, 25 C 9103, *Allison v. State Farm*, 25 C 4965; *Allison v. Coates*, 25 C 00427; *Allison v. Experian Information Solutions*, 25 C 00084.

**DISCUSSION**

I.      **Motion for Reconsideration**

A.      **Legal Standard**

A motion for reconsideration serves a limited function.  Generally, such motions must be based on a manifest error of law or fact or on newly discovered evidence.  *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012).  Importantly, they are not vehicles for "rehash[ing] previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).  Nor are they an opportunity "to advance arguments or theories that could and should have been made before the district court rendered a judgment."  *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012).

B.      **Analysis**

In moving for reconsideration, Allison argues that the court's prior decision to dismiss his case for lack of Article III standing "rests on the flawed legal premise that because Plaintiff cannot prove that an unknown third party has already viewed or misused his minor son's images, his injury is merely hypothetical."  (Mem. [78] ¶ 3.)  Allison calls this a "manifest error of law," as the "legal injury occurred the moment that Defendant's negligence caused sixteen portraits of Plaintiff's minor son to be sent into the world, unaccounted for and beyond Plaintiff's control."  (*Id.* ¶ 4.)  He claims this causes "ongoing fear and anxiety" which is a cognizable injury under Article III.  (*Id.*)

This argument does not support reconsideration.  The court continues to have serious questions about Plaintiff's standing to bring many of his claims.  For example, many of Allison's asserted injuries are intangible privacy harms premised on the alleged misdelivery of his son's school photos.  Such claims can be cognizable, *see, e.g.*, *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (explaining that intangible harms can give rise to Article III injury), but Allison does not explain how he personally suffered any concrete harm.  There is no

3

insinuation that he was pictured in the photographs, for instance, or any suggestion that his personal information was somehow leaked due to the misdelivery.

Allison's son, who was depicted in the images, may have been injured if the images were disseminated. Allison could possibly have brought this action in the name of his minor son, as "next friend" or the equivalent. *See Bria Health Servs., LLC v. Eagleson,* 950 F.3d 378, 384 (7th Cir. 2020). But Allison did not do so, perhaps because he personally planned to publicize those same photos to promote his own career as a recording artist. It is worth noting that Allison is suing Shutterfly, alleging the possibility of *inadvertent* publicization when Allison planned *deliberately* to do the same thing. But even if Allison had standing to bring this claim to vindicate his son's injuries, it would still fail. Allison has not alleged a claim for breach of privacy, as there is no basis here for a plausible suggestion that anyone ever viewed the photos or put Allison's son in a false light. Nor is the court aware of any authority holding that misdelivery of photos by a common carrier can lead to tort liability for the sender.

Allison has cited to *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015), a case which he characterizes as holding that "claims for violating privacy rights through the improper handling of photographic data were plausible and not speculative, even at the pleading stage." (Mem. [78] ¶ 4.) He calls this case "controlling." (*Id.*) His invocation of this case is not persuasive. *Norberg* concerns allegations that Shutterfly was using facial recognition technology in violation of the Illinois Biometric Privacy Act. It said nothing about the misdelivery of photos or about standing. In any event, *Norberg* is a district court case—it is not precedential, and certainly not "controlling."[2]

---

[2]    Allison's mischaracterization of the cases he cites, as well as his filing of prior documents that include citations to fictitious cases, are "hallmarks of a so-called AI hallucination, a circumstance where an AI large language model generates an output that is fictional, inaccurate, or nonsensical." *See Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 969–70 (7th Cir. 2026); *see also see also Turnage v. Associated Bank, N.A.*, No. 25-3004, 2025 WL 3052638, at *3 (D. Minn. Sept. 12, 2025) ("Every filing in a federal court that contains citations to phony case law amounts to a violation of Rule 11(b) of the Federal Rules of Civil Procedure. There is no *pro se* exception to Rule 11(b).").

4

Allison suggests that he personally suffered "emotional distress arising from the loss of control over sixteen images of his minor son and the risk that an unknown third party may have access to them."  (Reply [84] at 6.)  Assuming he has standing to bring such a claim, these allegations also do not state a plausible claim for relief.  Under Illinois law, "emotional distress damages are only cognizable where the distress inflicted is so severe that no reasonable man could be expected to endure it."  *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 645 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017).  Misdeliveries are, unfortunately, a fact of life—the court does not believe that misdelivery or loss of school photographs is sufficiently distressing so as to constitute a tort under Illinois law.

Shortly before filing his Reply Brief, Allison filed a document stylized as "Notice of Subsequent Factual Developments" [83].  According to this document, Shutterfly mailed Allison an "unsolicited package" containing a reprint of his son's photos and a letter indicating that his original payment method would be refunded with the $71.87 purchase price.  (Supp. [83] at 1.)  Mr. Allison attacks this as a "transparent and cynical litigation tactic designed to give the Court a basis to declare the breach of contract claim moot and dismiss the entire case," and urges that the package of reprints "ignores the true harm . . . caused by the reckless mishandling of a minor's sensitive images."  (*Id.*)  Perhaps Allison believes that once he filed a lawsuit, Shutterfly's compliance with its own terms of service by presenting reprints and a refund constitutes a "cynical litigation tactic."  The court does not share that belief.  And the court notes, again, the irony in Allison's attack on Shutterfly for the "reckless mishandling of a minor's sensitive images" in light of Allison's expressed plan to publicize those same "sensitive images" to promote his own career.

Allison also accuses Shutterfly of being somehow complicit in a "key potential witness" having "gone silent."  (*Id.* at 2.)  Some context: in Allison's motion for reconsideration, he attached an exhibit depicting an email chain between himself and a South Carolina attorney who evidently was experiencing similar problems with Shutterfly.  After Allison attached this email to the current motion, he reports, the attorney "ceased all communication" and has not "responded to Plaintiff's

5

attempts to schedule a call." (*Id.*)  Allison offers no support for his insinuation that opposing counsel, or some other representative of Shutterfly, "silenc[ed]" this attorney. (*Id.*)  The court warns that a baseless accusation can support an award of sanctions under FED. R. CIV. P. 11.

## II.  Subject Matter Jurisdiction

Finally, the court turns to the matter of subject matter jurisdiction.  In its earlier order, the court dismissed all the federal law claims and directed Mr. Allison to show cause as to why his case should not be dismissed for lack of subject matter jurisdiction—specifically, his apparent failure to meet the $75,000 amount in controversy requirement.  *See* 28 U.S.C. § 1332(a).  His only argument to this effect is that "evidence of a pattern of misconduct" suggests that punitive damages would be available in this case, and that punitive damages would exceed the statutory $75,000 threshold.  (Mem. [78] ¶ 6.)  But punitive damages are not available for contract claims under Illinois state law.  *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 112 Ill. 2d 87, 94, 492 N.E.2d 181, 183, 96 Ill. Dec. 939, 942 (Ill. 1986) ("[P]unitive damages are not recoverable for breach of contract.").  And even if they were available, an award of $75,000 in punitive damages on an approximately $75 loss—a ratio of 1000:1—could run afoul of the Due Process Clause of the U.S. Constitution.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").

<u>CONCLUSION</u>

The motion for reconsideration [78] is denied.  Plaintiff's remaining breach of contract claim is dismissed, without prejudice to renewal in state court, for lack of federal jurisdiction.  The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

ENTER:

Dated: June 8, 2026

REBECCA R. PALLMEYER
United States District Judge